Miles N. Clark, Esq.
Nevada Bar No. 13848
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
Fax: (702) 552-2370
Email: miles@milesclarklaw.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA (INDIANAPOLIS)**

| | |
|---|---|
| JASON DROWN, | : |
| | : |
| Plaintiff, | : Civil Action No.: 1:23-cv-01553 |
| | : |
| v. | : **COMPLAINT FOR DAMAGES** |
| | : **PURSUANT TO THE FAIR CREDIT** |
| DISH NETWORK; DITECH FINANCIAL, | : **REPORTING ACT, 15 U.S.C. § 1681, ET** |
| LLC; EQUIFAX INFORMATION | : **SEQ.** |
| SERVICES, LLC; NEWREZ LLC d/b/a | : |
| SHELLPOINT MORTGAGE SERVICING | : **JURY TRIAL DEMANDED** |
| NMLS; ONEMAIN FINANCIAL; and | : |
| TRANS UNION LLC, | : |
| | : |
| Defendants. | |

**JURISDICTION AND VENUE**

1. This Court has federal question jurisdiction because this case arises out of violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* 28 U.S.C. § 1331.

2. Venue is proper in the United States District Court for the District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiff Jason Drown ("Plaintiff") is a resident of Marion County, Indiana and because Defendants are subject to personal jurisdiction in Marion County, Indiana; conduct business in Marion County, Indiana; the events giving rise to this action occurred in Marion County, Indiana.

**PARTIES**

3.    Plaintiff is a natural person residing in the County of Marion, State of Indiana. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

4.    Defendant Ditech Financial ("Ditech") is a corporation doing business in the State of Indiana.  Ditech is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.  Upon information and belief, in the course of its business Ditech furnished credit information about Plaintiff to credit reporting agencies.

5.    Defendant Newrez LLC d/b/a Shellpoint Mortgage Servicing NMLS ("NR") is a corporation doing business in the State of Indiana.  NR is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.  Upon information and belief, in the course of its business NR furnished credit information about Plaintiff to credit reporting agencies.

6.    Defendant Dish Network ("Dish") is a corporation doing business in the State of Indiana. Dish is a "person" for purposes of 15 U.S.C. § 1681b in that it has procured consumer reports from a consumer reporting agency.

7.    Defendant Onemain Financial ("Onemain") is a corporation doing business in the State of Indiana.  Onemain is a "person" for purposes of 15 U.S.C. § 1681b in that it has procured consumer reports from a consumer reporting agency.

8.    Defendant Equifax Information Services, LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.

Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business in Indiana with its principal place of business in Georgia.

9.  Defendant Trans Union LLC ("Trans Union") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Trans Union is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business in Georgia with its principal place of business in Chicago, Illinois.

10. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants.

## GENERAL ALLEGATIONS

11. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

12. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through

the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

13.  Furthering the FCRA's goal of accuracy, a consumer may procure a "disclosure" of all information a reporting agency has stored on them under 15 U.S.C. § 1681g to, *inter alia*, review their information for inaccuracies or the presence of identity theft.  To the extent Plaintiffs' creditors chose to furnish data to a Consumer Reporting Agency ("CRA"), such data, if accurate, is typically included in Plaintiffs' "consumer files," which the CRA must disclose to a consumer in a clear and accurate manner upon request.  15 U.S.C. § 1681g. Section 1681g disclosures are "consumer reports" under the FCRA when they are acquired for free from nationwide consumer reporting agencies once during any 12-month period.  *See* 15 U.S.C. § 1681j(a)(2); *see also id.* at § 1681a(p).

14.  The FCRA's protection provisions also permit consumers to dispute the accuracy or completeness any item of information appearing in their file.  15 U.S.C. § 1681i(a). Information is inaccurate either because it is patently incorrect, or because it is materially misleading – i.e., the reporting contains omissions which might lead a reasonable credit decision-maker to misunderstand the nature of the reported information in a manner that might impact a future credit decision.

15.  Once notified of a dispute, a CRA must notify the source or furnisher of information, including all relevant information regarding the dispute the CRA received from the consumer. 15 U.S.C. § 1681i(a)(2).

16.   Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the CRA, conduct an investigation of the disputed item, and report the results of the investigation back to the CRA. 15 U.S.C. § 1681s-2(b).  This reinvestigation must conclude no later than 30 days after submission of a consumer dispute, or 45 days if the dispute pertains to a Section 1681j(a) disclosure.  *See* 15 U.S.C. § 1681i.

17.   If the furnisher's investigation uncovers that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

18.   If the CRA's reinvestigation (which necessarily includes the furnisher's investigation) finds the disputed information to be inaccurate, incomplete, or unable to be verified, then the CRA must either promptly delete that information or modify it, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681i(a)(5)(A).

19.   The CRA must timely notify the disputing consumer regarding the results of the reinvestigation. 15 U.S.C. § 1681i(a)(6).  As part of this notice of results of reinvestigation, the CRA must provide a "consumer report." 15 U.S.C. § 1681i(a)(6)(B)(ii).

20.   Whenever a reporting agency prepares a consumer report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  This obligation extends to both Section 1681g reports, 1681i(a)(6) reports, and any other consumer report fitting the definition contained in 15 U.S.C. § 1681a(d), whether sent to a consumer or any other party.

- 5 -

21.     In addition to ensuring accuracy, Congress also enacted the FCRA to protect consumer privacy.  15 U.S.C. § 1681b provides an exhaustive list of permissible circumstances under which a person may access a consumer report from a consumer reporting agency.  15 U.S.C. § 1681b(f) prohibits the use and obtaining of consumer reports "for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with Section 1681e of this title by a prospective user of the report through a general or specific certification."   A CRA is obligated to follow reasonable policies and procedures when it permits disclosure of consumer reports pursuant the exclusively enumerated permissible purposes under 15 U.S.C. § 1681e(a).

**PLAINTIFF'S BANKRUPTCY FILINGS AND CONSUMER DISPUTES**

22.     Unless or about July 15, 2019, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 et seq. Plaintiff's case was assigned Case Number 19-05139-JMC-13 ("Bankruptcy").

23.     Plaintiff included an obligation related to his home mortgage in the bankruptcy.  This interest was held by Ditech and, later, NR during the course of the bankruptcy.

24.     The mortgage interest was included in Plaintiff's controlling plan on reorganization. During the bankruptcy, Plaintiff moved to modify his Chapter 13 plan to permit for the sale of his home during the bankruptcy.  BK Doc. 38.  After trustee and court approval, Plaintiff's home was subsequently sold and a lump sum payment to the trustee with some of the proceeds to the Bankruptcy Trustee. BK Doc. 41, 46, 49, 51.  On September 13, 2022, the Bankruptcy Court approved Plaintiff's request to modify his Chapter 13 plan to

reflect the fact of the home sale, after which Plaintiff owed no obligation related to the mortgage. *See* BK Doc. 53.

25.    On October 10, 2022, Plaintiff's bankruptcy was discharged after satisfaction of this Chapter 13 plan.

26.    However, Equifax, Ditech and NR either reported or caused to be reported derogatory, inaccurate, or misleading information after the Bankruptcy. The reporting of these defendants was not only inaccurate, but also materially misleading.

### EQUIFAX FCRA VIOLATIONS – 15 U.S.C. § 1681I, 1681G, 1681E(B)

27.    On February 2, 2023, Equifax sent Plaintiff a credit report pursuant to 15 U.S.C. § 1681g. Thereon, Equifax and Ditech reported inaccurate information related to Plaintiff's Ditech account. Specifically, although Plaintiff's account was disposed of and paid in full prior to the bankruptcy discharge, Equifax and Ditech reported the account with a derogatory bankruptcy indicator which did not reflect the fact that the home had been sold. This reporting was inaccurate, because it suggested that the account had been subject to bankruptcy discharge of his obligations, when in fact the home had been paid in full prior to the time Plaintiff earned his discharge.

28.    These inaccuracies and omissions would have, and did, confuse an ordinary consumer like Plaintiff, and thus violated FCRA Section 1681g(a)(1).

29.    On or about April 15, 2023, pursuant to 15 U.S.C. § 1681i, a dispute letter was sent in which Plaintiff sought to correct Equifax and Ditech's reported information regarding the above misreported trade line by notifying Equifax, in writing, of the incorrect and inaccurate credit information reported by Equifax and requesting that the account be deleted ("Equifax Dispute Letter").

30. Equifax was required to conduct an investigation into the disputed account pursuant to 15 U.S.C. § 1681i. A reasonable reinvestigation would have resulted in the updates Plaintiff requested.

31. However, Equifax failed to comply with its obligation to provide Plaintiff with the results of any "reinvestigation" completed pursuant to 15 U.S.C. § 1681i(a)(6) relating to the Equifax Dispute Letter.

32. As a result of Equifax's failure to provide a reinvestigation, Equifax failed in its duties as required by and in violation of 15 U.S.C. § 1681i(a)(6).

33. Plaintiff procured an additional report from Equifax, dated August 2, 2023. This Report showed that Equifax and Ditech continued to inaccurately report the account and that no modification had been made, other than a slight change to Plaintiff's prior payment history.

34. On information and belief, Equifax's policies and procedures were not designed to ensure the maximum accuracy of the credit information it prepared on consumer reports. The inaccuracies cited here would not have occurred but for the absence of reasonable checks and balances to ensure consistent reporting across tradelines. This violated 15 U.S.C. § 1681e(b).

35. Plaintiff has suffered concrete and imminent harm to creditworthiness. His August 2, 2023 Equifax report demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm

offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

36. Also, as a result of Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Equifax's inaccurate reporting, and damage to Plaintiff's creditworthiness.

37. Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

38. Equifax's violations of the FCRA were willful, because Equifax failed to properly respond to Plaintiff's dispute, and continued to report inconsistent and incomplete information, despite the clear mandates of the FCRA; therefore, Plaintiff is entitled to statutory damages. At minimum, Equifax's violations were negligent.

39. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**TRANS UNION FCRA VIOLATIONS – 15 U.S.C. § 1681I, 1681G, 1681E(B)**

40. On February 6, 2023, Trans Union sent Plaintiff a credit report pursuant to 15 U.S.C. § 1681g. Thereon, Trans Union and NR reported inaccurate information related to Plaintiff's NR account. Specifically, although Plaintiff's account was disposed of and paid in full prior to the bankruptcy discharge, Trans Union and NR reported the account with a derogatory bankruptcy indicator which did not reflect the fact that the home had been sold. This reporting was inaccurate, because it suggested that the account had been subject to

bankruptcy discharge of his obligations, when in fact the home had been paid in full prior to the time Plaintiff earned his discharge.

41.    These inaccuracies and omissions would have, and did, confuse an ordinary consumer like Plaintiff, and thus violated FCRA Section 1681g(a)(1).

42.    On or about April 15, 2023, pursuant to 15 U.S.C. § 1681i, a dispute letter was sent in which Plaintiff sought to correct Trans Union and NR's reported information regarding misreported trade lines by notifying Trans Union, in writing, of the incorrect and inaccurate credit information reported by Trans Union and requesting that the account's status be changed to "paid in full" ("Trans Union Dispute Letter").

43.    Trans Union was required to conduct an investigation into the disputed account pursuant to 15 U.S.C. § 1681i.  A reasonable reinvestigation would have resulted in the updates Plaintiff requested.

44.    However, on Trans Union's May 17, 2023 reinvestigation, Trans Union and NR refused to update the status on Plaintiff's account to "paid in full."

45.    As a result of Trans Union's failure to provide a consumer disclosure, Trans Union failed in its duties as required by and in violation of 15 U.S.C. § 1681i(a)(6).

46.    Plaintiff procured an additional report from Trans Union, dated August 2, 2023.  This Report showed that Trans Union and NR continued to inaccurately report the account without a status of "paid in full."

47.    On information and belief, Trans Union's policies and procedures were not designed to ensure the maximum accuracy of the credit information it prepared on consumer reports. The inaccuracies cited here would not have occurred but for the absence of reasonable

checks and balances to ensure consistent reporting across tradelines.  This violated 15 U.S.C. § 1681e(b).

48.    Plaintiff has suffered concrete and imminent harm to creditworthiness.  His August 2, 2023 Trans Union report demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.  Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

49.    Also, as a result of Trans Union's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Trans Union's inaccurate reporting, and damage to Plaintiff's creditworthiness.

50.    Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

51.    Trans Union's violations of the FCRA were willful, because Trans Union failed to properly respond to Plaintiff's dispute, and continued to report inconsistent and incomplete information, despite the clear mandates of the FCRA; therefore, Plaintiff is entitled to statutory damages.  At minimum, Trans Union's violations were negligent.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

52.     Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**DITECH FCRA VIOLATIONS – 15 U.S.C. § 1681S-2(B)**

53.     Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

54.     As noted above, Dietch inaccurately reported Plaintiff's account as if it had been discharged in the bankruptcy, when it was not.  Additionally, Ditech reported Plaintiff's account inaccurately on a February 6, 2023 consumer report from Trans Union, reporting the interest with a derogatory bankruptcy notation notwithstanding the fact Plaintiff's home was sold prior to his bankruptcy discharge.

55.     Additionally, Ditech's reporting was not internally consistent.  For example, in the payment history section of its reporting, Ditech did not report any positive payments on his Equifax report, but only late payments.  By contrast, in some of the same months where Ditech reported derogatory payment history on his Equifax report, Ditech reported no payment history to Trans Union for the same month.  Similarly, Ditech did not report any of Plaintiff's positive payment history to Equifax, whereas Trans Union's report contained numerous months which included the positive payment history.  Thus, the Ditech reporting was internally inconsistent and both of sets of reported information cannot possibly be correct at the same time.

56.     Thus, Ditech's reporting was not only patently incorrect, but also materially misleading.

57.     In addition to Plaintiff's Equifax dispute, on April 15, 2023, a dispute letter was sent to Trans Union pursuant to 15 U.S.C. § 1681i requesting that the account be deleted.

1   58.   Upon, information and belief, upon receiving the dispute, Equifax and Trans Union notified
2         Ditech of Plaintiff's dispute based on their mandated statutory duty pursuant to 15 U.S.C.
3         § 1681i(a)(2).
4
5   59.   Ditech was required to conduct an investigation into this specific account on Plaintiff's
6         consumer reports pursuant to 15 U.S.C. § 1681s-2(b).
7   60.   A reasonable investigation by Ditech at any point following the disputes would have
8         indicated Plaintiff's Ditech account should have either been deleted, or corrected to reflect
9         the fact that the interest was satisfied prior to discharge of the bankruptcy, or at least
10        reported consistent between the agencies.
11
12  61.   However, there is no indication ever made all of the corrections Plaintiff requested.  There
13        is no evidence of any Reinvestigation from Equifax sent to Plaintiff in connection with the
14        dispute at all.  And while a May 17, 2023 reinvestigation report from Trans Union indicated
15        that the Ditech account had been deleted, as noted above Ditech continued to report the
16        account on Plaintiff's Equifax credit report as of August 2, 2023.
17
18  62.   By failing to fully correct Plaintiff's information, Ditech ensured Plaintiff's information
19        would continue to report inaccurately and inconsistently.
20  63.   These failures caused Plaintiff's consumer reports to include materially misleading
21        omissions, which in context created misperceptions about Plaintiff's dispositions of the
22        debt owed to Ditech.
23
24  64.   Ditech repeatedly failed to conduct a reasonable investigation, as required by 15 U.S.C. §
25        1681s-2(b).
26  65.   Ditech failed to review all relevant information provided by Plaintiff in the disputes, as
27        required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).
28

- 13 -

66.    Due to Ditech's failure to reasonably investigate the disputes, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

67.    Ditech's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful.  Ditech knew about the disposition of Plaintiffs' accounts because it received notice of Plaintiff's bankruptcy, and failed repeatedly to either correct the inaccuracies or even report the accounts consistently. At minimum, Ditech's conduct was negligent.

68.    Plaintiff has suffered concrete and imminent harm to creditworthiness.  His August 2, 2023 Equifax credit report demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.  Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

69.    Also as a result of Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Equifax's inaccurate reporting, and damage to Plaintiff's creditworthiness.

70.  Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

71.  Equifax's violations of the FCRA were willful, because Equifax failed to properly respond to Plaintiff's dispute, and continued to report inconsistent information; therefore, Plaintiff is entitled to statutory damages.  At minimum, Equifax's violations were negligent.

72.  Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## NR FCRA VIOLATIONS – 15 U.S.C. § 1681S-2(B)

73.  Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

74.  As noted above, NR inaccurately failed to report the status of Plaintiff's account as "paid in full" on Plaintiff's Trans Union credit report.  Additionally, on a February 2, 2023 credit report from consumer reporting agency Experian Information Solutions, Inc. ("Experian"), NR also failed to report a status of "paid in full," which was inaccurate for the same reasons as NR's reporting to Trans Union.

75.  Additionally, NR's reporting was not internally consistent.  For example, while it at least reported a remark of "closed" to Trans Union, it failed to report any "closed" status on his Experian reporting, indicating only that the account was subject "petition" for Chapter 13 bankruptcy, casting doubt as to whether the account was still open or not.  Thus, the NR reporting was internally inconsistent and both of sets of reported information cannot possibly be correct at the same time.

76.  Thus, NR's reporting was not only patently incorrect, but also materially misleading.

- 15 -

77. In addition to Plaintiff's Trans Union dispute, on April 15, 2023, a dispute letter was sent to Experian pursuant to 15 U.S.C. § 1681i requesting that the account be updated to report that it had been "paid in full."

78. Upon, information and belief, upon receiving the dispute, Trans Union and Experian notified NR of Plaintiff's dispute based on their mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

79. NR was required to conduct an investigation into this specific account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681s-2(b).

80. A reasonable investigation by NR at any point following the disputes would have indicated Plaintiff's NR account should have reported with a status of "paid in full," and reported the obligation consistently between the agencies.

81. However, there is no indication that Plaintiff's NR account was ever updated as required. There is no evidence of any reinvestigation from Experian sent to Plaintiff in connection with the dispute at all.  And as noted above, Trans Union's May 17, 2023 reinvestigation report indicated that the NR account had not been updated to include a "paid in full" status. August 2, 2023 reports from Trans Union and Experian showed that NR's reporting remained materially unchanged.

82. By failing to fully correct Plaintiff's information, NR ensured Plaintiff's information would continue to report inaccurately and inconsistently.

83. These failures caused Plaintiff's consumer reports to include materially misleading omissions, which in context created misperceptions about Plaintiff's dispositions of the debt owed to NR.

84.    NR repeatedly failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b).

85.    NR failed to review all relevant information provided by Plaintiff in the disputes, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

86.    Due to NR's failure to reasonably investigate the disputes, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

87.    NR's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful. NR knew about the disposition of Plaintiffs' accounts because it received notice of Plaintiff's bankruptcy, and failed repeatedly to either correct the inaccuracies or even report the accounts consistently. At minimum, NR's conduct was negligent.

88.    Plaintiff has suffered concrete and imminent harm to creditworthiness. His August 2, 2023 Experian and Trans Union credit reports demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

89.   Also as a result of Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Equifax's inaccurate reporting, and damage to Plaintiff's creditworthiness.

90.   Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

91.   Equifax's violations of the FCRA were willful, because Equifax failed to properly respond to Plaintiff's dispute, and continued to report inconsistent information; therefore, Plaintiff is entitled to statutory damages.  At minimum, Equifax's violations were negligent.

92.   Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## DISH FCRA VIOLATIONS – 15 U.S.C. § 1681B(F)

93.   On Plaintiff's August 2, 2023 Equifax credit report, Equifax reported two inquiries from Dish Network on August 30, 2022 and January 24, 2023.  Plaintiff has no account relationship with Dish, nor has any recollection that Dish provided Plaintiff with a firm offer of credit.  Plaintiff does not have any recollection of ever providing Dish with any authorization to procure his private credit information from Equifax.

94.   Dish was prohibited from procuring Plaintiff's consumer report from Equifax without a permissible purpose, which Dish never obtained in any form prior to obtaining this credit information.

95.   Therefore, Dish had no reason or permissible purpose to access Plaintiff's consumer report from Equifax, and therefore violated 15 U.S.C. § 1681b(f).

96.    Dish's conduct was willful because the permissible-purpose requirements of the FCRA are clear and unambiguous in requiring a permissible purpose before Dish could procure Plaintiff's private credit information.  At minimum, Dish's conduct was negligent.

97.    Plaintiff has suffered actual damages as a result of this intangible violation of his privacy, which take the form of emotional distress.

98.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### ONEMAIN FCRA VIOLATIONS – 15 U.S.C. § 1681B(F)

99.    On Plaintiff's August 2, 2023 Trans Union and Experian credit reports, multiple inquiries for Onemain were reported.  Specifically, on March 15, 2023, Onemain procured Plaintiff's consumer report from Trans Union for purposes of "account review," and from Experian for undisclosed purposes on December 3, 2022 and March 15, 2023.[1]

100.   Plaintiff has no account relationship with Onemain, nor has any recollection that Onemain provided Plaintiff with a firm offer of credit.  Plaintiff does not have any recollection of ever providing Onemain with any authorization to procure his private credit information from Equifax.

101.   Onemain was prohibited from procuring Plaintiff's consumer report from Equifax without a permissible purpose, which Onemain never obtained prior to obtaining this credit information.

102.   Therefore, Onemain had no reason or permissible purpose to access Plaintiff's consumer report from Equifax, and therefore violated 15 U.S.C. § 1681b(f).

---

[1] Onemain's name was reported as "Onemain financial" on his Trans Union report, and as "Onemain" on his Experian report.

103. Onemain's conduct was willful because the permissible-purpose requirements of the FCRA are clear and unambiguous in requiring a permissible purpose before Onemain could procure Plaintiff's private credit information, which it did repeatedly.  At minimum, Onemain's conduct was negligent.

104. Plaintiff has suffered actual damages as a result of this intangible violation of his privacy, which take the form of emotional distress.

105. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – PLAINTIFF VS. EQUIFAX
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681E(B), 1681G, 1681I

106. Plaintiff realleges all paragraphs above as if realleged herein.

107. The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i, 1681g.

108. Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

109. Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

110. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. See 15 U.S.C. §§ 1681n, 1681o.

### SECOND CAUSE OF ACTION – PLAINTIFF VS. TRANS UNION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT

**15 U.S.C. § 1681E(B), 1681G, 1681I**

111.    Plaintiff realleges all paragraphs above as if realleged herein.

112.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i, 1681g.

113.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

114.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

115.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. See 15 U.S.C. §§ 1681n, 1681o.

**THIRD CAUSE OF ACTION – PLAINTIFF VS. DITECH
VIOLATION OF THE FAIR CREDIT REPORTING ACT
15 U.S.C. § 1681S-2(B)**

116.    Plaintiff realleges all paragraphs above as if realleged herein.

117.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

118.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

119.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

120.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. See 15 U.S.C. §§ 1681n, 1681o.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FOURTH CAUSE OF ACTION – PLAINTIFF VS. NR**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681S-2(B)**

121.    Plaintiff realleges all paragraphs above as if realleged herein.

122.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

123.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

124.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

125.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. See 15 U.S.C. §§ 1681n, 1681o.

**FIFTH CAUSE OF ACTION – PLAINTIFF VS. DISH**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681B(F)**

126.    Plaintiff realleges all paragraphs above as if realleged herein.

127.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681b(f).

128.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

129.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

130.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. See 15 U.S.C. §§ 1681n, 1681o.

**SIXTH CAUSE OF ACTION – PLAINTIFF VS. ONEMAIN**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681B(F)**

131.    Plaintiff realleges all paragraphs above as if realleged herein.

132.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681b(f).

133.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

134.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

135.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. See 15 U.S.C. §§ 1681n, 1681o.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants in Counts 1 through 6:

**FIRST THROUGH SIXTH CAUSES OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

• actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

• statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

• punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

• costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA; and

• any other relief the Court may deem just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 29, 2023

Respectfully submitted,

By    /s/ Miles N. Clark, Esq.
Miles N. Clark, Esq.
Nevada Bar No. 13848
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148
Phone: (702) 856-7430
E-Fax: (702) 557-2370
Email: miles@milesclarklaw.com

*Attorney for Plaintiff*